1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9  | Kendal Ray Williams,                                No. CV 11-755-TUC-FRZ (BPV)

10 |                          Petitioner,              **REPORT AND**
                                                       **RECOMMENDATION**
11 | vs.

12 | Criag Apker,

13 |                          Respondent.

14

15      Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28

16 U.S.C. § 2241 (Petition), filed on November 23, 2011. (Doc. 1). Petitioner, Kendall Ray

17 Williams, claims he was wrongly sanctioned with a fine and loss of good time credits for

18 possession of intoxicants and destruction of evidence, and that the Disciplinary Hearing

19 Officer (DHO) violated his right to due process in connection with disciplinary

20 sanctions.[1]

21      Before the Court is the Petition (doc. 1), and Respondent's amended return with

22 accompanying exhibits (doc. 12) (Answer). Petitioner did not file a reply.

23      Pursuant to the Rules of Practice of this Court, this matter was referred to

24 Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 6).

25      For the reasons discussed below, the Magistrate Judge recommends that the District

26 Court enter an order dismissing the Petition for failure to exhaust administrative

27

28      [1] Ground One of the Petition, alleging claims for retaliation and threats to safety, was dismissed by the Court on February 3, 2012. (Doc. 6).

remedies.

## I.   PROCEDURAL BACKGROUND

Petitioner is presently incarcerated in the United States Penitentiary (USP) - Tucson. (Answer, Ex. 1, Attachment 1, Carney Declaration). This was also his place of incarceration at the time he filed his Petition, and at the time of the incidents which resulted in the disciplinary proceedings at issue in this Petition. (Petition, at 1; Answer, Ex. 1, Attachment 1, Carney Declaration). Petitioner contends that while incarcerated at USP-Tucson, 41 days of Good Conduct Time (GCT) was revoked and a $300 fine was assessed, based on an incident that occurred on August 6, 2011. (Petition at 5-6; Exhibit 1; Attachment 3). Petitioner claims the amount of GCT revoked and the fine were excessive. (Petition at 5-6). Additionally, Petitioner claims that his due process rights were violated during the hearing because he was not permitted to call a witness; the Unit Disciplinary Committee (UDC) hearing was improperly delayed; he was provided with only one instead of two UDC staff members and that one staff member was not certified; the officer made a false statement in his report; and the time of the incident was in error on the incident report. (Petition at 7).

## II.   DISCIPLINARY HEARING AND PROCEEDINGS

On August 6, 2011, Correctional Officer J. Power, doing rounds, observed Inmate Vigil holding a container in his hands, and smelled the odor of homemade intoxicants. (Answer, Ex. 1 - Carney Declaration, Attachment 3, Incident Report, ¶ 11). Inmate Vigil ignored Officer Power's orders to give him the container, and walked into cell 221, where Williams was located. (*Id.*)  Williams grabbed the container, and Officer Power ordered him to put the container down, to which Williams replied "come on Power it's not a lot, can you let me slide this time." (*Id.*) Williams emptied the container in the toilet and flushed the contents. (*Id.*) The container and lid tested positive using an Alco-Sensor, and Williams was taken to the Special Housing Unit (SHU). (*Id.*) On the same date, Officer Power wrote Incident Report #2195218, charging the Petitioner with making, possessing or using intoxicants in violation of Code 113; in violation of Code 115; and refusing to obey an order of any staff member, in violation of Code 307. (*Id.*, ¶¶ 9-10, 13)

- 2 -

On that same date, Acting Lieutenant Boncore, delivered a copy of the Incident Report to Williams and advised him of his right to remain silent during the investigation. (*Id.*, ¶¶ 14-16, 22-23) Acting Lieutenant Boncore concluded that Williams had been properly charged and recommended that Smith remain in Special Housing, and that the incident should be referred to the Unit Disciplinary Committee (UDC) for further processing. (*Id.*, ¶¶ 26-27)

On August 18, 2011, Williams was notified that the UDC hearing had been delayed while the institution was placed on lockdown status. (*Id.*, Advisement of Incident Report Delays) At the UDC, Petitioner claimed that the incident report was false and that the cameras should be reviewed. (*Id.*, Incident Report, 17) Due to the seriousness of the charges, the UDC referred the inmate to the Disciplinary Hearing Officer (DHO) for further action, and made no recommendation for sanctions. (*Id.*, ¶¶ 18, 20).

On August 18, 2011, at the UDC hearing, Petitioner requested the presence of a staff representative for his DHO proceeding. (*Id.*, Notice of Discipline Hearing Before the DHO, dated August 10, 2011). Correctional Officer Scheid was appointed as Petitioner's staff representative. (*Id.*) Petitioner also requested the presence of three witnesses: Lt. Selby, Correctional Officer Stephen Kirksey and Correctional Officer Lems. (*Id.*) Petitioner completed a subsequent form entitled Notice of Discipline Hearing Before the (DHO), dated September 7, 2011. (*Id.*, Notice of Discipline Hearing Before the DHO, dated September 7, 2011) In the September 7 form, Petitioner wrote that he did not wish to have any witnesses appear at his DHO proceeding. Petitioner signed this form on September 7, 2011, and it was witnessed by Officer D. Flores. (*Id.*)

On September 23, 2011, DHO V. Petricka conducted a disciplinary hearing. (*Id.*, DHO Report, ¶ IX). Petitioner appeared at the hearing with a staff representative. (*Id.*, ¶ II) No witness statements were provided by Petitioner. (*Id.*, ¶ III) Petitioner stated he did not grab the container or dump it down the toilet, that it was already dumped before the officer walked in the room. (*Id.*, ¶ III)

The DHO found Petitioner committed the violations of 1) making, possessing or using intoxicants in violation of Code 113; and, 2) destroying and/or disposing of any

item during a search or attempt to search, in violation of Code 115. (*Id.*, ¶ IV) The DHO dismissed the charge of Code 307. (*Id.*, ¶ V) The DHO based her findings on the reporting officer's statements and photographs of the container and the positive Alco-Sensor reading. (*Id.*) The DHO found Petitioner's statements without merit in light of the reporting officer's clear identifications of the actions of inmate Vigil and Petitioner. (*Id.*) The DHO further noted that the UDC had been delayed, and questioned Petitioner as to whether the delay had a negative effect on his ability to prepare his defense, to which he stated it did not. (*Id.*) For each violation, the DHO sanctioned Petitioner to 60 days of disciplinary segregation, loss of 41 days GCT, one year loss of commissary privileges, and a monetary fine totaling $300. (*Id.*, ¶ VI)

On November 1, 2011, the Bureau of Prison's (BOP's) Western Regional Office in Stockton, California, received an administrative remedy from Petitioner, in which he attempted to appeal the findings of the DHO regarding incident report number 2195218. (Answer, Ex. 1, Carney Declaration at ¶4; Attachment 4) The appeal was rejected and returned to Petitioner, and Petitioner was with the opportunity to resubmit his appeal in proper form within 15 days. (*Id.*) Respondents declare that no appeal was resubmitted. (*Id.*)

## III.    DISCUSSION

### A.    Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Writ of habeas corpus relief extends to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1) & (3). A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez,* 204 F.3d at 864, and must file the petition in the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980). This Court has territorial jurisdiction over the case in question since Petitioner was incarcerated at USP Tucson when he filed his Petition, and named the

appropriate warden as respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (Whenever a §2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

Petitioner contends in Ground Three that the monetary fine of $300 is an overly harsh punishment in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. This claim only challenges the conditions of his confinement and, if Williams were successful in this claim, there would not be any impact on the legality or duration of Williams' confinement. Claims that seek to challenge the conditions of Williams' confinement are cognizable in a civil rights action rather than a habeas corpus action. Because the Court does not have jurisdiction of these claims in this habeas action; the Magistrate Judge recommends dismissing Ground Three without prejudice. Alternatively, the Magistrate Judge recommends, as discussed below, dismissing this claim for failing to exhaust, or on the merits.

As to remaining Grounds Two and Four, Petitioner is seeking relief with respect to disciplinary proceedings that, in part, resulted in the loss of good time credit while incarcerated at USP-Tucson.  Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, Grounds Two and Four of the Petition are properly before this Court under 28 U.S.C. §2241.

B.    Exhaustion

There is no statutory requirement, pursuant to 28 U.S.C. § 2241, that federal prisoners must exhaust administrative remedies before filing a habeas corpus petition in court, thus it is not a jurisdictional prerequisite. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Nevertheless, federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 36 (2006). While "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion

is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement where administrative remedies are inadequate, futile, or pursuit of them would cause irreparable harm. *Id.* at 1000-01; *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (*per curiam*) (waiving exhaustion where the initial request for an administrative remedy was denied based on official Bureau of Prisons (BOP) policy and further appeal would almost certainly have been denied based upon the same policy.)

Accordingly, if the petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding to court," *Brown v. Rison, 895 F.2d 535*, unless such remedies are no longer available, in which instance he may have procedurally defaulted on his claims, *see Francis v. Rison*, 894 F.2d 353, 354-55 & n. 2 (9th Cir. 1990) (applying procedural default rules to administrative appeals); *see generally Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Tacho v. Martinez*, 862 F.2d 1376, 1378 (9th Cir. 1988). If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray*, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to *pro se* litigants).

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The BOP's Administrative Remedy program requires the prisoner to submit a formal written Administrative Remedy request within "20 calendar days following the

date on which the basis for the Request occurred." 28 C.F.R.§ 14 (a)-(b). Where the prisoner seeks to appeal a DHO finding, the formal request is to be submitted directly to the appropriate regional office. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." § 542.15(a). The time limits may be extended upon a showing of a valid reason for the delay. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*

In this case, the DHO entered the finding against Petitioner on October 12, 2011, and delivered the report to Williams on October 19, 2011. Accordingly, Petitioner's appeal was timely, though rejected with leave to refile within 15 days because it was not in the proper format. Williams did not attempt to timely refile.

The purpose of requiring inmates to file administrative remedies is to allow prison officials the opportunity to resolve problems and obviate the need for litigation. *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). It allows for the development of a factual record and for the agency to correct any errors, in addition to conserving court time. *Id*. Further, the administrative remedy procedure was implemented, in part, to conserve the resources of federal courts. *Id*. Petitioner did not allow the administrative remedy program an opportunity to address this issue, and he has not administratively exhausted this issue. Exhaustion is required prior to filing a lawsuit. Petitioner failed to exhaust his claims, and they are now procedurally defaulted.

Petitioner has not sufficiently demonstrated that he exhausted administrative remedies or that exhaustion would be futile. Cause and prejudice, however, may excuse procedural default of administrative remedies. *Nigro*, 40 F.3d at 997 (citing *Francis*, 894 F.2d at 355, n.2). Petitioner asserts that DHO Petricka "has not sent the packet [] which has the documents showing what my sanctions are. This information is mandatory in the Federal Bureau of Prisons' Administrative Remedy Process." (Petition, at 5) Petitioner states that DHO Petricka's refusal to send the packet, as well as the transfer of Petitioner to the Special Management Unit, are devices used to hinder Petitioner's appeal process. (*Id.*)

Contrary to Petitioner's assertion, the DHO report shows that the report, including the sanctions, was mailed through Institution Mail on October 19, 2011. (Answer, Ex. 1, Carney Declaration, Attachment 3, Discipline Hearing Report, ¶ IX) Petitioner is aware of his sanctions because he is challenging each of the sanctions imposed by the DHO. (See Petition, at Grounds One – Three) Additionally, the Petitioner did file an administrative remedy, but the record indicates it was rejected with two notations "ONE" and "RSA." "ONE" indicates that Petitioner was only allowed to submit up to one letter-size continuation page. "RSA" indicates that Petitioner could resubmit the appeal in proper form. The record does not indicate that Petitioner's appeal was rejected because it lacked the DHO's packet. (Answer, Ex. 1, Carney Declaration, Attachment 4, Administrative Remedy Generalized Retrieval) In fact, the record demonstrates that Petitioner did file an administrative remedy, though it was in improper format, and thus, even if he did not receive the DHO report, it did not prohibit him from filing an administrative claim, and he was not prejudiced.

Finally, any delay occasioned by a situation, such as an extended period in-transit during which an inmate was separated from documents needed to prepare the appeal is grounds for an extension in filing time. 28 C.F.R. § 542.14(b). Petitioner did not seek such an extension. "Difficulties which a prisoner may experience in meeting the time requirements for an administrative appeal are properly first brought before the administrative agency." *Martinez*, 804 F.2d at 571 (citing 28 C.F.R. § 542.15 (1984)). Petitioner has not alleged that he brought any grievance regarding the DHO's failure to deliver the DHO report in a timely fashion, or that he was unable to file his administrative appeal in a timely fashion because he was placed in the SMU.

Thus, the Magistrate Judge finds that Petitioner has not demonstrated cause and prejudice for his failure to exhaust administrative remedies. Allowing petitioner to bypass the exhaustion requirement on this issue would only encourage Petitioner and other prisoners to deliberately bypass the BOP's administrative remedy process.

Accordingly, Petitioner's claim should be dismissed without prejudice for failure to exhaust administrative remedies. Alternatively, the Magistrate Judge addresses the

merits of the claim below.

C.      Merits

1.      *Due Process*

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987)(citing *Wolff*, 418 U.S. at 563-66.). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citing *Wolff*, 418 U.S. at 566). Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.").

Petitioner asserts that 1) the DHO refused to call a witness who was reasonably available and would have demonstrated that he was not intoxicated; 2) that the UDC hearing was delayed without notice; 3) that the UDC was not composed of two or more people, and Petitioner believes the one UDC committee member was not certified; 4) the DHO erroneously concluded that although the camera makes clear that the officer's statement was false, as to the opening of Petitioner's door, it does not mean that the rest of the statement was false; 5) that the intoxicants could not have been both poured down the toilet and later tested for alcohol; and 6) the time that Officer Power states he wrote the hearing report is after the time the report states that Petitioner received it. (Petition, at 7).

In the federal prison system, the BOP has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. § 541.10 *et*

- 9 -

*seq.* These guidelines largely track the due process requirements established by the Supreme Court in *Wolff. See Young v. Kann*, 926 F.2d 1396, 1404 (3rd Cir. 1991). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. § 541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. § 541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the DHO for further hearing. 28 C.F.R. § 541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. § 541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. § 541.17(b).

As to Petitioner's claims that the UDC was not properly composed and that the UDC hearing was delayed without notice, a violation of a BOP regulation does not rise to a due process violation. Indeed, due process does not impose a requirement that a UDC be held. As noted above, the Supreme Court held that the Constitution requires compliance with minimal federal due process standards and explained that these minimal requirements are: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 563-67. As these requirements were met in this case, Petitioner's dissatisfaction with the composition of the UDC does not implicate due process concerns, and Petitioner has not in fact

articulated any way in which he was harmed. Moreover, the relevant inquiry is not "whether the prison complied with its own regulations," but whether Plaintiff was "provided with process sufficient to meet the *Wolff* standard." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

As to Petitioner's claim that the DHO refused to call a readily available witness who would have demonstrated that Petitioner was not intoxicated, such testimony would have been irrelevant to the charges in this case, because simple possession satisfies the violation code with which he was charged. The complete denial of the opportunity to present specifically identifiable witnesses who possess *exculpatory* evidence is a procedural defect which necessarily implies the invalidity of the deprivation of good time credits. *See Edward v. Balisok*, 520 U.S. 641, 646 (1997). Evidence that Petitioner was not intoxicated would not have been exculpatory.

Petitioner's claims that the DHO refused to find the officer's statement false, when the camera showed the first part of his statement to be false, and that the intoxicants could not have been both poured down the toilet and later tested for alcohol, fail on several accounts. First, the record indicates that no videotape evidence was viewed at the hearing. Second, the DHO is entitled to weigh the evidence and make factual findings. Even if a videotape had demonstrated that a portion of the officer's statement was false, as to a non-elemental portion of the charge, such as opening a door, the DHO was not required to find that this necessarily renders the witness's statement as to the elements of the charge untrustworthy.  Finally, Petitioner has not claimed that there was not enough residual content left in the container and lid to successfully run a test on the Alco-Sensor.

Finally, Petitioner has not demonstrated how discrepancies in the date and time the reporting officer indicated he completed the incident report amounts to a due process violation, rather than a typographical error. As Petitioner does not allege that he was not given written notice of the charges, there is no prejudice, and no due process violation.

Furthermore, the Court has reviewed the incident report and the DHO report and finds that the due process requirements of a prison disciplinary hearing, as established by

*Wolff, supra,* were met in this case. The Petitioner received written notice of the charges well in advance of the hearing. The hearing was conducted by DHO V. Petricka, whom the Petitioner does not dispute was an impartial officer. Petitioner was allowed the opportunity to present witnesses and documentary evidence. He was also afforded an opportunity to have a staff representative, and Officer Scheid appeared with him at the DHO proceeding. Petitioner was given a copy of the DHO's report which contained a written statement of the evidence relied upon and the reasons for the sanctions.

Accordingly, the Court finds that Petitioner's claim that he was deprived of due process is without merit and fails to provide a basis for relief.

2. *Double Jeopardy*

Williams contends that the disciplinary sanctions violated Double Jeopardy because the act of possessing and of pouring out the intoxicants were all part of the same act. (Petition, at 5) Factually, this argument has no merit. Petitioner was charged with two distinct violations for possessing the intoxicants, and, when the possession was discovered, destroying and/or disposing of the intoxicants. Furthermore, disciplinary sanctions do not constitute punishment within the meaning of the Double Jeopardy Clause because:   (1) even if prison disciplinary sanctions are "punishment," they generally are not distinct from the punishment for the conviction for which petitioner is in custody and (2) the sanctions are not punishment for purposes of double jeopardy because they serve the governmental remedial goals of maintaining institutional order and encouraging compliance with prison rules. *See United States v. Brown*, 59 F.3d 102, 104-05 (9th Cir. 1995) (stating that prison disciplinary sanctions do not violate the prohibition against double jeopardy).

3. *Excessive Sanctions*

Finally, Petitioner contends that monetary fines imposed for each violation are an overly harsh punishment in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. The Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense. *See Rummel v. Estelle*, 445 U.S. 263, 271–74 (1980). Petitioner argues, as he did in his double jeopardy claim, that the

- 12 -

fines were not warranted because two separate sanctions ($200 and $100) were imposed for one act of infractions. (Petition, at 6) The undersigned has already established that this assertion is factually incorrect; Petitioner was charged and found to have violated two distinct violations. Williams also argues that the monetary fine was not warranted because no BOP property was damaged or destroyed. (*Id.*) The monetary sanctions imposed on Williams, however, conform to the sanctions permitted for the greatest severity level prohibited acts which Petitioner was found to have violated. See 28 C.F.R. § 541.3, Table 1. The DHO explained the seriousness of the charges and the severity of the punishment, stating that the use of alcohol in a correctional setting has proven in the past to be disruptive to security and the orderly running of the institution which threatens the safety of staff and other inmates, and that the imposition of monetary fines is to deter Petitioner form exhibiting future acts of misbehavior. The DHO stated that destroying or attempting to dispose of any item during a search or attempt to search exhibits disrespect of the officer and the functions he has to perform within a unit, detracts from his ability to perform his duties and control his area of responsibility, and therefore disrupts the orderly operation of the institution. Additionally, it has, on occasion, been shown to contribute to other inmates participation; leading to more serious problems. The undersigned finds that the sanctions imposed was not grossly disproportional to the crime committed, thus Williams has failed to state an Eighth Amendment violation. *See Wright v. Riveland,* 219 F.3d 905, 916 (9th Cir. 2000) (a fine violates the excessiveness standard of the Eighth Amendment if the assessment is grossly disproportional to the crime committed) (citing *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)).

//
//
//
//
//
//
//

**IV.      RECOMMENDATION**

For the reasons stated above, the Magistrate Judge recommends that the District Court, after its independent review, enter an order DISMISSING the Petition.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.

If objections are filed the parties should use the following case number: **No. CV-11-755-TUC-FRZ.**

Dated this 30th day of July, 2012.


Bernardo P. Velasco
United States Magistrate Judge